# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WELLGISTICS, LLC, | ) | |
| | ) | |
| Plaintiff/counterclaim defendant, | ) ) | C.A. No.: N22C-08-182 KMM |
| | ) | |
| v. | ) | |
| | ) | |
| WELGO, INC., | ) | |
| | ) | |
| Defendant/counterclaim plaintiff. | ) ) | |

Submitted: November 8, 2023
Decided: January 9, 2024

## <u>MEMORANDUM OPINION AND ORDER</u>

Wellgistics, LLC's Motion to Dismiss Welgo, Inc.'s Second Amended
Counterclaim: **GRANTED**

Wellgistics, LLC's Motion to Strike Welgo, Inc.'s Affirmative Defenses:
**GRANTED**

Chad S.C. Stover, Esquire, Amy E. Tryon, Esquire, Barnes & Thornburg LLP, Wilmington, Delaware, Marc S. Silver, Esquire (*pro hac vice*) (*argued*), Christine E. Skoczylas, Esquire (*pro hac vice),* Barnes & Thornburg LLP, Chicago, Illinois, *Attorneys for Wellgistics, LLC*.

Basil C. Kollias, Esquire, Gordon L. McLaughlin, Esquire, Kollias Law, LLC, Wilmington, Delaware, Geri Lyons Chase, Esquire (*pro hac vice*) (*argued*), Law Office of Geri Lyons Chase, Annapolis, Maryland, *Attorneys for Welgo, Inc.*

**MILLER, J.**

# I. INTRODUCTION

After a failed business relationship between Wellgistics, LLC ("Wellgistics") and Welgo, Inc. ("Welgo"), the parties entered into a promissory note in connection with Welgo's repurchase of its stock owned by Wellgistics. Wellgistics filed this action seeking to recover amounts due under that note. In response, Welgo filed a counterclaim, as twice amended,[1] asserting a breach of contract claim arising out of a mutual confidentiality agreement between the parties,[2] both of which are prescription drug wholesalers. Welgo's theory is that after it disclosed confidential information to Wellgistics, it began purchasing large quantities of a specific prescription medication from Welgo's suppliers. This resulted in such an increase in the national utilization rate that insurance companies stopped providing full coverage for the medication. Physicians then substantially reduced the number of prescriptions written for this medication. As a result, Welgo asserts that it sustained substantial losses.

In its answer, Welgo asserted affirmative defenses of fraud and estoppel.

Wellgistics filed a Motion to Dismiss the Second Amended Counterclaim's ("SAC") Count I for breach of contract, pursuant to Superior Court Civil Rule

---

[1] D.I. 19.

[2] Welgo also asserted a claim for breach of fiduciary duty in Count II of the Second Amended Counterclaim. By Order dated November 29, 2023, the Court granted Wellgistics' motion to dismiss Count II for lack of subject matter jurisdiction, subject to Welgo's right to file a written election to have it transferred to the Court of Chancery. D.I. 42.

1

12(b)(6), asserting that Welgo did not adequately allege a breach of the contract or resulting damages.[3]

Wellgistics also filed a Motion to Strike Welgo, Inc.'s Affirmative Defenses, pursuant to Rules 8(a), 8(c), 9(b), and 12(f).[4]

While Delaware's notice pleading standard is minimal, a complaint (or counterclaim) must assert more than conclusory allegations to support a claim. Because the SAC fails to allege sufficient factual support for Count I, the Motion to Dismiss is granted.

An affirmative defense may be stricken if it is legally insufficient. Here, the affirmative defenses rely on the same factual predicate as the SAC and fail to allege the requisite elements of each defense. Additionally, Welgo failed to plead fraud with particularity. Accordingly, the Motion to Strike is granted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The parties*

Welgo is a wholesale supplier of prescription medications. It contracts directly with manufacturers to purchase various medications at favorable prices.[5] Its customers are physicians who dispense medications directly to their patients.[6]

---

[3] D.I. 23.
[4] D.I. 22.
[5] D.I. 19, ¶¶ 5-6, 13.
[6] *Id.*, ¶ 5.

From its formation until 2019, Michael Lion ("Lion") and Keith Holdan ("Holdan") each owned fifty percent (50%) of Welgo's stock.[7]

Wellgistics is also a prescription drug wholesaler. While it sells to some physicians, its primary customers are independent pharmacies.[8] Wellgistics is alleged to be a "much larger wholesaler" than Welgo,[9] but there are no allegations relating to Wellgistics' position in the marketplace.

## B. *Wellgistics is provided with Welgo's confidential information and purchases Welgo stock.*

Shortly after formation of Welgo, a conflict arose with Holdan, who then sought to sell his interest in Welgo.[10]

Lion met with a Wellgistics representative, who indicated that it may be interested in purchasing Holdan's Welgo stock. In September 2019, Welgo and Wellgistics entered into a Mutual Confidentiality Agreement (the "MCA"), the "Purpose" of which was to exchange information "in connection with their discussions of a possible business relationship."[11] The MCA provides:

> During the term of this Agreement, and for a period of five (5) years thereafter, the Recipient shall keep confidential and shall not divulge the Disclosing Party's Confidential Information to any third party or use such information

---

[7] *Id.*, ¶¶ 7, 15.
[8] *Id.*, ¶ 10.
[9] *Id.*, ¶ 30.
[10] *Id.*, ¶ 8.
[11] *Id.*, ¶¶ 9, 11-12.

3

other than for the Purpose, without the prior written consent of the Disclosing Party.[12]

As part of the due diligence process, Welgo provided Wellgistics with copies of Welgo's "financial information, existing contracts [with manufacturers, which afforded Welgo profitable pricing for Naproxen Oral Solution], proprietary software, and other information critical to [Wellgistics'] consideration of its potential acquisition of a substantial stake in the company."[13]  At the time of these disclosures, a substantial portion of Welgo's "annual gross revenue was derived from the medications purchased from these manufacturers due to the pricing Welgo, LLC had negotiated for these drugs."[14]

Welgo alleges that in October 2019, Michael Pearce ("Pearce") purchased Holdan's Welgo stock, which is alleged to have been funded by Wellgistics.[15]  The SAC does not identify Pearce's connection to Wellgistics, if any.  Pearce joined Welgo's board of directors in November 2019.[16]  In December 2019, Wellgistics purchased Pearce's Welgo stock, thus becoming a 50% owner of the company.[17]

---

[12] *Id*., Ex. A.
[13] *Id.,* ¶¶ 12-13.
[14] *Id.,* ¶ 14.
[15] *Id.*, ¶¶ 7, 15.
[16] *Id.*, ¶ 15.
[17] *Id.*, ¶ 21.  The Complaint asserts that Wellgistics' interest in Welgo represented only a 40% stake. D.I. 1, ¶ 8.  For purposes of the motion to dismiss, the Court must accept Welgo's allegation that Wellgistics held a 50% interest in the company.

4

**C.** *Wellgistics allegedly purchases large quantities of a prescription drug, causing an increase in the national utilization rate.*

Welgo alleges that in December 2019, it learned that Wellgistics representatives had contacted Welgo's contracted medication manufacturers to inform them that Welgo would now be purchasing its drugs from Wellgistics rather than from these manufacturers.[18] Welgo did not consent to these communications.[19] Welgo does not allege that it suffered any harm from these communications.

Around the same time, Welgo also learned that Wellgistics began purchasing large quantities of the "same medications" that Welgo purchased from its contract manufacturers.[20] The SAC identifies only one drug – Naproxen Oral Solution.[21] Welgo never authorized or consented to Wellgistics' purchase of this medication, which it had never purchased prior to entering into the MCA, Welgo alleges.[22]

Welgo immediately demanded that Wellgistics cease and desist from interfering with Welgo's contracts with drug manufacturers and that Wellgistics discontinue its "purchase of the same drugs."[23] Welgo asserts that it "unequivocally advised [Wellgistics] that its high-volume purchases of the aforesaid medications was a breach of the MCA and may result in a marked increase in national utilization

---

[18] D.I. 19, ¶ 16.
[19] *Id.*, ¶ 18.
[20] *Id.*, ¶ 17.
[21] *Id.*, ¶ 13.
[22] *Id.*, ¶ 18.
[23] *Id.*, ¶¶ 18-19, 29.

5

classification[24] for the medications, which would cause Welgo substantial economic harm."[25] Despite Welgo's demands, Wellgistics "knowingly and intentionally" continued to contact Welgo's contract manufacturers and continued to purchase large quantities of the medications, knowing the detrimental impact it could have on Welgo's business.[26]

Welgo alleges that by Wellgistics purchasing large quantities of "the medications" from "Welgo's contract manufacturers, other manufacturers, wholesalers or third-party logistics companies" major PBMs limited Welgo's contract manufacturers' medication approvals, affecting insurance coverage for the medications.[27] As a result, the medications would no longer be fully covered by insurance, and therefore, Welgo's customers (physicians) substantially reduced the

---

[24] Welgo describes the impact of an increase in the national utilization rate as follows:

> National utilization rates for medications are closely monitored by pharmacy benefit managers hereafter ("PBM") and the insurers that they represent. When utilization rates increase for a specific medication or group of medications, PBM's [sic] advise the insurers to take one of several potential actions intended to reduce the amount of money paid by the insurers for the medications. These potential actions include requiring prior authorization of insurance coverage for a medication, reducing the share of the medication cost covered by the insurer, or removing the medication from the insurer's formulary (i.e. list of medications paid for by the insurer).

*Id.*, ¶ 31.
[25] *Id.*, ¶ 19.
[26] *Id.*, ¶ 20.
[27] *Id.*, ¶ 33.

6

number of prescriptions they wrote for these drugs and instead, prescribed other medications that were covered by insurance, which Welgo did not sell.[28]

### D. *Welgo repurchases its stock from Wellgistics.*

Welgo and Wellgistics decided to part ways. In July 2020, they executed a repurchase agreement and Welgo executed a promissory note in favor of Wellgistics to purchase its interest in Welgo.[29] Wellgistics' Complaint asserts one count for breach of the promissory note (as amended) (the "Note"), due to Welgo's alleged failure to make the required payments.[30]

### E. *Welgo asserts the SAC and affirmative defenses.*

In the SAC, Welgo asserts that Wellgistics breached the MCA by utilizing confidential information regarding Welgo's profitable manufacturing contracts. As a result, Welgo lost over $7.5 million dollars "in value" and revenue of $200,000 per month (or another $7.2 million as of the filing of the SAC).[31] Welgo further asserts that Wellgistics is barred from recovering under the Note due to Wellgistics' fraud, which is based on the same factual predicate as its breach of contract claim. Finally, Welgo asserts that Wellgistics is estopped from recovering under the Note, again based on the same factual predicate as the breach of contract claim.

---

[28] *Id.*, ¶ 34.
[29] *See* Complaint (D.I. 1) and SAC (D.I. 19) ¶¶ 9-10.
[30] D.I. 1.
[31] D.I. 19.

## III. STANDARD OF REVIEW

Under Superior Court Civil Rule 12(b)(6), dismissal is appropriate when the complaint (or counterclaim) fails to state a claim upon which relief can be granted.[32] The Court accepts as true all well pleaded factual allegations; credits vague allegations as "well pleaded" if they give the opposing party notice of the claim; draws all reasonable inferences in favor of the non-moving party; and denies dismissal if there is a reasonably conceivable set of circumstances of recovery on the claim.[33]

Delaware's pleading standard is "minimal,"[34] but the liberal construction afforded to a claimant does not "extend to 'conclusory allegations that lack specific supporting factual allegations.'"[35] Accordingly, the Court should dismiss a complaint, or a counterclaim, if the claimant fails to make "specific allegations supporting each element of a claim or if no reasonable interpretation of the alleged facts reveals a remediable injury."[36]

---

[32] *Nat'l Amusements, Inc. v. Endurance Am. Specialty Ins. Co.*, 2023 WL 3145914, at *8 (Del. Super. Apr. 28, 2023); Super. Ct. Civ. R. 12(b)(6).

[33] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011). Wellgistics' briefs repeatedly argues that the SAC does not "plausibly" allege a claim. *See*, D.I. 23 at pp. 5, 9, 13, 15. The Delaware pleading standard, however, is a more liberal "reasonably conceivable" standard, which the Court applies to the SAC.

[34] *Cent. Mortg. Co.*, 27 A.3d at 536-37, n.13 (the "'conceivability' standard is more akin to 'possibility,' while the federal 'plausibility' standard falls somewhere beyond mere 'possibility' but short of 'probability.'").

[35] *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *6 (Del. Super. Jan. 13, 2021) (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[36] *Axogen Corp. v. Integra LifeSciences Corp.*, 2021 WL 5903306, at *2 (Del. Super. Dec. 13, 2021) (citing *Surf's Up Legacy Partners, LLC*, 2021 WL 117036, at *6).

8

The standard for a motion to strike is similar to the motion to dismiss standard.[37]  Under Rule 12(f), the Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[38]  Motions to strike are not favored and are granted "sparingly."[39]  "When ruling on a motion to strike, 'the Court must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law.'"[40]

## IV.    DISCUSSION

### A.    *The SAC fails to state a claim.*

#### 1.    *Breach of contract under Delaware law*

Under Delaware law,[41] a claimant asserting a breach of contract must allege: (1) the existence of a contract; (2) the breach of a contractual obligation; and (3) resulting damages.[42]  While damages may be plead generally and a claimant need not specify a dollar amount of the damages, a factual basis to relate the alleged injury

---

[37] *Nat'l Amusements, Inc.*, 2023 WL 3145914, at *8 (citing *Nichols v. Chrysler Grp. LLC*, 2010 WL 5549048, at *5 (Del. Ch. Dec. 29, 2010)).

[38] Super. Ct. Civ. R. 12(f).

[39] *Salem Church (Del.) Assocs. v. New Castle Cnty.*, 2004 WL 1087341, at *2 (Del. Ch. May 6, 2004).

[40] *Nichols*, 2010 WL 5549048, at *5.

[41] The MCA provides that it is governed by New York law.  The parties, however, argued the motion under Delaware law.  Because the parties relied on Delaware law and there is no actual conflict with New York law on the elements of breach of contract, *see, e.g., inVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *4 (Del. Ch. Feb. 18, 2021) (applying New York law to breach of contract claim), the Court is applying Delaware law to the motion to dismiss.

[42] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003); *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *9 (Del. Ch. June 11, 2020).

9

to the breach is required.[43]  Conclusory allegations of damages are insufficient.[44]

"A complaint that gives fair notice 'shifts to the [opposing party] the burden to determine the details of the cause of action by way of discovery for the purpose of raising legal defenses.'"[45]  Therefore, to avoid dismissal under Delaware's notice pleading standard, a party "need not plead evidence," but at a minimum, must "allege facts that, if true, state a claim upon which relief can be granted."[46]

## 2.    *The parties' contentions*

Wellgistics first argues that the SAC fails to state a claim because it fails to allege that Wellgistics disclosed or used confidential information.  Even if the SAC could be construed to assert that Wellgistics used Welgo's confidential contract pricing, Wellgistics contends that Welgo failed to allege (i) why Wellgistics began purchasing large quantities of the drugs, (ii) that Wellgistics negotiated profitable pricing for itself, or (iii) that when Wellgistics started purchasing large quantities of the medication it knew about Welgo's profitable pricing.

---

[43] *Cf. Phage Diagnostics, Inc. v. Corvium, Inc.*, 2020 WL 1816192, at \*9 (Del. Super. Mar. 9, 2020).  *Phage Diagnostics* addresses a fraud claim.  The Court found that while damages may be plead generally even in fraud claims, a plaintiff "must relate its alleged injury to the misrepresentations that constitute its grounds for fraud such that the issue of damages may be inferred from the complaint."  While Welgo's claim is for breach of contract, the same pleading standard applies – a claimant must allege facts relating the alleged injury to the breach.

[44] *Id.*

[45] *VLIW Tech., LLC*, 840 A.2d at 611.

[46] *Id.*

Second, Wellgistics argues that even if the SAC sufficiently alleges a breach of the MCA, the alleged damages are not causally connected to the alleged breach.

Welgo counters that Delaware only requires notice pleading and it sufficiently alleged a breach of the MCA. Welgo says it put Wellgistics on notice that it breached the MCA by, among other things, wrongfully using its contract pricing to purchase large quantities of the medications. Due to Wellgistics' large purchases, the national utilization rate for the drugs sold by Welgo increased, which caused insurance companies to substantially reduce or eliminate their coverage for the drug and ultimately, the number of prescriptions for the medications substantially declined, resulting in harm to Welgo.[47] Welgo asserts that this is sufficient to state a claim.

### 3. *Analysis*

The SAC identifies the contract between the parties, which is not in dispute. Despite Wellgistics' protestations, the SAC, while vague, sufficiently alleges that Wellgistics used the confidential information provided to it; namely, the profitable pricing contracts with Welgo's manufacturers for Naproxen Oral Solution (the "Medication").[48] The SAC further asserts that Wellgistics had not purchased this product prior to becoming privy to Welgo's confidential contract information.

---

[47]D.I. 19, ¶¶ 30-34.

[48] *Id.*, ¶ 13. Welgo references the "same drugs" or "medications" multiple times throughout the SAC, but never identifies any other drug for which it allegedly had profitable pricing with its manufacturers. Therefore, to the extent that Welgo was attempting to assert a breach of contract claim based on any other drugs, the SAC is too conclusory to state a claim with respect to those drugs.

11

Welgo need not allege Wellgistics' motivation for buying the Medication or the terms of the alleged purchases, as Wellgistics asserts. Thus, drawing all reasonable inferences in Welgo's favor as the Court must, the SAC can be fairly read as asserting that Wellgistics had knowledge of Welgo's profitable pricing contracts, and it breached the MCA by using this confidential information to purchase substantial amounts of the Medication from Welgo's contract manufacturers. Accordingly, the SAC sufficiently alleges the first two elements of a breach of contract claim, although barely.

Welgo's theory of damages as a result of Wellgistics purchasing large quantities of the Medication is that the national utilization rate increased (during an unspecified time), and in response, in late 2020 Caremark, a major national PBM, limited Welgo's contract manufacturers' medication approvals, affecting insurers' coverage for the prescription.[49] Other PBMs subsequently took similar actions with respect to manufacturers with whom Welgo contracted for the drug.[50] As a result of loss of insurance coverage for the Medication, Welgo's physician-customers "significantly reduced the number of prescriptions" for the Medication and instead prescribed alternate medications, which Welgo does not sell.[51]

---

[49] *Id.*, ¶ 33.
[50] *Id.*
[51] *Id.*, ¶ 34.

Wellgistics does not attack the allegations that there was an increase in the national utilization rate for the Medication and that physicians began prescribing other medications in its place. Wellgistics' attack on Welgo's damages theory is that the SAC fails to provide a factual basis to support the conclusion that Wellgistics' alleged increase in purchases of the Medication alone caused: (i) the increase in the utilization rate, (ii) PBMs to make recommendations to insurers to reduce or eliminate coverage for the Medication, (iii) insurers to change their coverage for the Medication, and (iv) physicians to begin prescribing medications which Welgo does not sell.[52]

Welgo responds that Delaware only requires notice pleading and Wellgistics is on notice of Welgo's damages theory. Notice pleading, however, requires more than conclusory allegations. Here, Welgo provides no factual basis to infer that Wellgistics' use of Welgo's confidential information caused the increase in the utilization rate. Wellgistics sells prescription drugs mainly to independent pharmacies. The SAC is devoid of any facts from which the Court can infer that Wellgistics' purchases *alone* could have had such an impact on the national utilization rate. Additionally, there are no facts in the SAC from which the Court

---

[52] Wellgistics attached exhibits to its brief and argued that the exhibits show why the number of prescriptions significantly declined. D.I. 23, p. 15. To give credit to these exhibits and this argument would draw inferences in favor of Wellgistics, the moving party, which is improper on a motion to dismiss. Thus, the Court disregarded the exhibits and this argument.

can infer that Welgo's manufacturers *alone* could have produced sufficient quantities of the Medication to have had an impact on the national utilization rate, even if they sold all their product to Wellgistics (which is not alleged). The allegations in the SAC support a reasonable inference that for Wellgistics to have the alleged impact on the national utilization rate, it would have to purchase the Medication from multiple other sources. Indeed, Welgo alleges that in addition to its manufacturers, Wellgistics purchased the Medication from "other manufacturers or wholesalers."[53] But Welgo does not link such other purchases to the alleged improper use of its confidential information. Stated differently, Welgo does not allege facts to infer that Wellgistics' purchases from these other sources was improper, even if the purchases caused or contributed to a national utilization rate increase. It is not reasonable to infer that these other manufacturers sold the drug to Wellgistics based on pricing Welgo negotiated with its manufacturers. Furthermore, Welgo does not assert any contractual duty that Wellgistics owed to Welgo to avoid an increase in the national utilization rate through purchases from non-Welgo contracted manufacturers.

Even drawing all reasonable inferences in Welgo's favor, it is simply inconceivable, without factual support, that Wellgistics – as a lone actor in the vast national medication marketplace – could purchase so much of the Medication

---

[53]D.I. 19, ¶ 32.

directly from Welgo's contract manufacturers to cause an increase in the national utilization rate, which caused PBMs to recommend a reduction in insurance coverage and insurers to limit coverage for the drug, and ultimately caused physicians to substantially reduce prescription levels. Because Welgo failed to meet Delaware's minimal notice pleading standard, its breach of contract counterclaim must be dismissed.

### B. *Welgo's affirmative defenses are insufficient.*

#### 1. *Pleading fraud and estoppel*

To state a claim for fraud, a pleading must allege:

(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.[54]

A claim for fraud[55] may be based on representations in a contract, but the factual allegations of fraud must be separate from the breach of contract factual

---

[54] *Everphone, Inc. v. Go Tech. Mgmt.,* LLC, 2023 WL 7996560, at *4 (Del. Super. Nov. 17, 2023) (citing *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005)).

[55] Welgo styled its fraud allegation as an affirmative defense. An affirmative defense is generally viewed "as a new matter constituting a defense offered under the assumption the Complaint is true, but a legal defense exists to the Complaint's assertion." *James River-Pennington Inc. v. CRSS Cap., Inc.*, 1995 WL 106554, at *12 (Del. Ch. Mar. 6, 1995). It is unclear whether Welgo's assertion of fraud is actually an affirmative defense or an affirmative claim because it does not appear to relate to the subject matter of the Complaint – the Note and redemption agreement. Under Rule 8(c), the mis-designation of a counterclaim or affirmative defense does not affect the validity of the claim/defense. Thus, whether it is a claim or defense, the Court's analysis here is the same.

allegations.[56] Damages arising from the alleged fraud must be separate and cannot be merely a rehash of the alleged contractual damages.[57] The Court generally looks to the timing of the alleged misconduct in determining whether the fraud claim is "truly separate and distinct from mere [contractual] non-performance allegations."[58]

Delaware law requires that fraud be plead with particularity – a heightened pleading standard,[59] even when plead as an affirmative defense.[60] To satisfy Rule 9(b), a fraud claim must allege: "(1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations."[61] "Essentially, the [claimant] is required to allege the circumstances of the fraud with detail sufficient to apprise the [opposing party] of the basis for the claim."[62]

Estoppel is applied to prevent injustice and it "arises when a party to a

---

[56] *AssuredPartners of Va., LLC v. Sheehan*, 2020 WL 2789706, at *10 (Del. Super. May 29, 2020).
[57] *Id.*
[58] *Everphone, Inc.*, 2023 WL 7996560, at *8; *see also Black Horse Capital, LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *25 (Del. Ch. Sept. 30, 2014) ("'a plaintiff cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations….'") (citations omitted).
[59] Super. Ct. Civ. R. 9(b).
[60] *Commonwealth Const. Co. v. Cornerstone Fellowship Baptist Church, Inc.*, 2006 WL 2567916, at *25 (Del. Super. Aug. 31, 2006) ("Superior Court Civil Rule 9(b) requires that '[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity.' Such particularity requires, even where fraud is pled as an affirmative defense, that the party averring fraud must provide the time, place and contents of the fraudulent act or omission, as well as the person who gave the false representation.").
[61] *Medlink Health Sols., LLC v. JL Kaya, Inc.*, 2023 WL 1859785, at *2 (Del. Super. Feb. 9, 2023) (quoting *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006)).
[62] *Id.*

transaction by word, deed or silence conducts himself in such a manner that the law forbids enforcement of a claim …."[63] To assert estoppel,

> it must appear that the party claiming estoppel lacked knowledge or the means of obtaining knowledge of the truth of the facts in question, that he relied on the conduct of the party against whom estoppel is claimed, and that he suffered a prejudicial change of position in consequence thereof.[64]

### 2. *The parties' contentions*

Welgo's affirmative defenses are, in their entirety:

FIRST AFFIRMATIVE DEFENSE – ESTOPPEL – "The plaintiff's conduct as set forth in the counterclaim appearing below is such that they be [sic] estopped from prosecuting this action;"

SECOND AFFIRMATIVE DEFENSE – FRAUD – "the plaintiff's conduct/actions are as described in the [defendant's] counterclaim appearing below is such that the plaintiff's actions were fraudulent as to the defendant;"

Wellgistics contends that the affirmative defenses should be stricken because they do nothing more than assert bare-bones conclusory allegations, thus, Rule 8's pleading requirements have not been satisfied. It also argues that the fraud defense must be plead with particularity under Rule 9(b) and that defense fails for this reason as well.

---

[63] *Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 535 (Del. Super. 1990).
[64] *Id.*; *Borders v. Townsend Assocs.*, 2002 WL 725266, at *5 (Del. Super. Apr. 17, 2002).

Welgo counters that Rule 8(e) requires only that its affirmative defenses be asserted in a clear, concise and direct manner and it has satisfied this requirement. Relying on *Reeder v. Sanford School, Inc.*,[65] Welgo argues that it is not required to plead the elements of estoppel. The fact that it raised estoppel as a defense is sufficient, according to Welgo. To the extent that Welgo is required to plead a misrepresentation to state a defense of estoppel (as Wellgistics argues), it has done so by asserting in the SAC that Wellgistics improperly used Welgo's confidential information disclosed pursuant to the MCA. Finally, relying on *Wood v. Rodeway Inn*,[66] Welgo argues that even if its fraud defense is vague, it would be premature to dismiss the defense at this stage.

### 3. *Analysis*

Motions to strike are disfavored and granted sparingly. It is appropriate, however, to strike an affirmative defense that is legally insufficient. Under Welgo's theory, simply identifying estoppel as a defense is sufficient and nothing further is required. While pleadings are to be concise and direct, to be legally sufficient, an affirmative defense must provide some factual support for the assertion of the defense.

*Reeder* does not help Welgo's cause. There, the Court was addressing

---

[65] 397 A.2d 139 (Del. Super. 1979).
[66] 2015 WL 994855 (Del. Super. Mar. 4, 2015).

whether a complaint must affirmatively plead estoppel, as opposed to estoppel being raised as an affirmative defense. Thus, *Reeder* does not stand for the proposition that no factual support is required for affirmative defenses. Indeed, even under Delaware's liberal pleading standard, conclusory allegations are insufficient.

Welgo failed to plead any elements of its estoppel defense. Among other things, Welgo asserted no facts that it relied on any Wellgistics' conduct or that Welgo changed its position as a result of such reliance. Accordingly, the affirmative defense of estoppel is stricken.

Welgo's fraud defense fares no better. Nowhere in the SAC is there an allegation that Wellgistics made a false representation to Welgo, let alone any reliance. Indeed, no representations, other than those in the contract, were alleged to have been made by Wellgistics. While a breach of representations in a contract *may* also support a tort claim for fraud, the pleading must allege a separate factual basis for the fraud claim and separate damages. Welgo failed to do so. Welgo's fraud defense does nothing more than incorporate the very same facts and alleged damages asserted in support of the contract claim.[67]

In addition, *Wood* does not stand for the proposition that dismissal of a vague

---

[67] *See, Partners & Simons, Inc. v. Sandbox Acquisitions, LLC*, 2021 WL 3159883, at *6 (Del. Ch. July 26, 2021) (plaintiffs' fraud and contract claims were not redundant because plaintiffs sufficiently differentiated the fraud and contract damages and thus, the measure of damages were not the same).

claim at the pleading stage is premature. *Wood* addressed the sufficiency of a claim for negligence under Rule 9(b)'s heightened pleading standard. The Court ruled that the complaint, which "border[ed] upon vagueness", alleged sufficient facts to state a claim, although barely so.[68] Thus, the complaint's vagueness was not a sufficient ground for dismissal. Here, unlike Wood's claim, the fraud defense is not just vague, it is conclusory.

Not only has Welgo failed to plead its fraud defense with the required particularity, it failed to plead basic elements of the defense. Accordingly, it is stricken.

---

[68] 2015 WL 994855, at *1, 3.

## V.    CONCLUSION

Because Welgo failed to allege any reasonably conceivable circumstances under which it is entitled to recover under Count I of its SAC, Wellgistics' Motion to Dismissed is **GRANTED**.

Welgo has failed to adequately plead its affirmative defenses of fraud and estoppel and therefore Wellgistics' Motion to Strike is **GRANTED**.

Welgo is granted leave to file amended affirmative defenses and counterclaim within 30 days.

**IT IS SO ORDERED**.

*/s/Kathleen M. Miller*
Kathleen M. Miller, Judge

21